**XXth CENTURY HEATING & VENTILATING CO., Petitioner,**

v.

**The DEPARTMENT OF ENERGY et al., Respondents.**

No. 78-3356.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1979.

Decided March 13, 1980.

Richard E. Guster, Roetzel & Andress, George W. Rooney, Jr., Akron, Ohio, for petitioner.

Mark Kreitman, Federal Energy Administration, Charles Duncan, Jr., Secretary Dept. of Energy, Paul G. Wallach, Kathrine L. Henry, Washington, D. C., for respondents.

Before MERRITT and JONES, Circuit Judges, CECIL, Senior Circuit Judge.

1. 42 U.S.C. § 6201 *et seq.* (1976); *see* 42 U.S.C. § 6293 (1976) (mandating development of test procedures).

2. 10 C.F.R. Part 430 (1979); *see* 43 Fed.Reg. 20147 *et seq.* (1978).

MERRITT, Circuit Judge.

This proceeding for review under the Administrative Procedure Act concerns the mathematical model by which the Department of Energy requires furnace manufacturers to compute the annual fuel utilization efficiency of heat exchanger furnaces. The model involves several calculations that ultimately compare heat output with energy input. XXth Century Heating & Ventilating Company, a manufacturer of heat exchanger furnaces, has challenged the validity of one of those calculations as applied to tests of its furnaces. We remand the case to the DOE for reconsideration of the calculation by which the burner off-time of XXth Century heat exchanger furnaces is computed.

### I.

Congress and the President provided for development of the fuel efficiency model in the Energy Policy and Conservation Act of 1975.[1] The model is the foundation of a long-range statutory program that eventually will result in labelling and energy efficiency standards for furnaces and various other consumer products. The goal of the statutory plan is to provide a rational basis for energy-conscious consumer decision making.

After an extended notice and comment period, the DOE prescribed several test procedures for furnaces in May 1978.[2] The tests were devised by the National Bureau of Standards after a prolonged period of consultation with various industry research groups and intra-agency consideration. Generally the tests attempt to measure heat loss.

Altogether there are four tests. The first three tests check steady-state, heat-up, and cool-down fuel efficiency.[3] These three tests monitor the actual operation of furnaces.

3. *See* 10 C.F.R. § 430.22(n) (1979); *id.* at Appendix N.

The fourth test, which is at issue in this case, is purely a mathematical model. The model itself involves no operation of furnaces. Instead it uses heat loss readings from the heat-up and cool-down tests, and a variety of other data, in order to derive mathematically the annual fuel utilization efficiency of heat exchanger furnaces.[4] Among the data included in the complex model is a factor that defines the amount of time for which the furnace burner hypothetically operates. It is the calculation by which the frequency of burner operation is determined that is involved in this case.

Pursuant to 42 U.S.C. § 6306(b)(1) (1976), XXth Century brought this proceeding for review of the applicability of the DOE fuel utilization efficiency model to its furnaces.[5] Use of the current DOE model results in a finding that the average annual fuel efficiency of XXth Century's furnaces is nearly 10% lower than that of furnaces produced by other manufacturers.[6] According to XXth Century, the DOE model inaccurately measures the fuel efficiency of its products. XXth Century charges that the model is arbitrary, capricious, or otherwise not in accordance with law as applied to its heat exchanger furnaces.

## II.

A heat exchanger furnace contains a heat exchanger and a blower. The heat exchanger is a metallic chamber. Inside the chamber is a burner. Fueled by gas or oil, the burner bakes the heat exchanger. Warmth emanates from the heat exchanger's metallic outer surface.

The blower is a fan located outside the heat exchanger. After the burner within the heat exchanger starts to produce heat, the adjacent blower lifts off the emanating warmth and circulates it through a system of ducts and vents. In this manner a heat exchanger furnace warms homes and offices.

XXth Century's heat exchanger is atypical. The heat exchanger produced by most other manufacturers commonly is composed of thin sheet metal that weighs only a few pounds. By contrast the XXth Century heat exchanger consists of thick cast iron that weighs 461 pounds. According to XXth Century, the DOE model fails to account for this extraordinary difference in heat exchanger masses.

## III.

The DOE fuel efficiency model simulates the operation of a heat exchanger furnace during a standard burner cycle. It applies a series of calculations uniformly to all heat exchanger furnaces. The calculations represent various aspects of furnace operation. The model attempts, through the calculations, to reproduce the conditions under which a heat exchanger furnace would produce and distribute heat during the standard cycle. From the standard cycle the model extrapolates the annual fuel utilization efficiency of heat exchanger furnaces throughout the nation.

Under normal circumstances a system of thermostats controls the cycles of the burner and the blower.[7] When room temperature falls below the desired level, the thermostat signals the burner to produce heat. The blower begins to operate soon afterward. Once the temperature of the heat exchanger has reached a certain level, the thermostat system shuts off the burner.

4. *Id.* "Annual fuel utilization efficiency" for furnaces is the "ratio of annual output of useful energy delivered to the heated space to the annual fuel energy input. . . ." 10 C.F.R. § 430.22(n)(2) (1979).

5. On the motion of XXth Century, this Court on January 17, 1980, stayed the applicability of the DOE tests to XXth Century pending review.

6. Brief of Petitioner at 8.

7. An anticipator within the thermostat system regulates the burner. The anticipator is a small heater that expands a bimetal strip once the burner is switched on. When the anticipator heat has expanded the strip to a certain size corollated with desired room temperature, the strip automatically shuts off the burner. Contraction of the strip to a certain level reactivates the burner. Contraction is due to cooling of the room temperature, and consequently will not occur until after the blowers have stopped delivering heated air to the room.

The blowers continue to deliver heated air until room temperature has reached the pre-set level. At that time the thermostat shuts off the blower. The thermostat thus maintains a constant room temperature.

As a substitute for the thermostat system, the DOE model contemplates use of the burner during a standard 17.17 minute cycle. The model includes a calculation according to which the burner hypothetically warms the heat exchanger for 3.87 minutes, after which it shuts off for 13.3 minutes.[8] According to the DOE, it is after 13.3 minutes that room temperature under normal conditions no longer would satisfy the thermostat. The burner thus would have to begin heating the heat exchanger again at that time in order to provide a sufficiently warm supply of air to the blowers and to the room.

Implicit in the 13.3 minute off-period of the standard burner cycle is the assumption that the burner would start its cycle anew 10.3 minutes after the blower had shut down. It takes three minutes after the burner shuts off for the temperature of a conventional heat exchanger to cool to 40° Fahrenheit (F) above the room temperature, according to the DOE. At that point, the blower stops in the regular DOE cool-down test, which provides heat loss data for the fuel efficiency test. For 10.3 minutes thereafter, the burner in the DOE model hypothetically continues to remain off.

### IV.

XXth Century precipitated the present controversy when it prevailed upon the DOE to provide an optional amount of blower time for the cool-down test of its furnaces. The company asked the DOE to account in the cool-down test methodology for the greater heat retention capacity—and longer cooling time—of cast iron heat exchangers. XXth Century asserted that it normally would take at least 10.75 minutes

after burning—rather than the specified 3 minutes—for the temperature of its cast iron heat exchangers to subside to 40° F above room temperature. Industry research groups presented data to support the XXth Century contention.

Thus the DOE altered the prescribed blower conditions. As adapted by DOE, the cool-down test procedure now allows the blower to deliver heated air to the test facility for the longer of: (a) three minutes after the burner stops; or (b) the amount of time that it *actually* would take for the heat exchanger to cool to 40° F above room temperature.[9] The alternate blower provision reflects the greater ability of XXth Century's dense heat exchangers to retain burner-generated heat. Yet use of the results of the optional cool-down test in the fuel efficiency model effectively abbreviates the interval between shut-down of the blower and start-up of the hypothetical burner of XXth Century's furnace.[10]

### V.

The change in blower procedures led to the controversy. XXth Century claims that, because it would use the optional blower time in cool-down tests of its furnace, the standard burner calculation of the fuel efficiency test would require an unduly frequent operation of its test burner. According to XXth Century, the burner calculation of the DOE model requires its burner to start up too soon—4.05 minutes—after the blower would have shut down. The company argues that the model should not require the burner to start up again for at least 10.3 minutes after the blower would have shut down. The model allows an implicit 10.3 minute interval to all other furnaces, XXth Century notes. To deny the same interval to its furnaces, says the company, computes extra and unneeded fuel use into the fuel efficiency calculation and

---

8. 10 C.F.R. Part 430, Appendix N at 4.2.20 & 4.2.21 (1979).

9. *Compare* 42 Fed.Reg. 40832 (1977) at 3.2.1 *with* 43 Fed.Reg. 20158 (1978) at 3.2.1 (addition of optional blower cycle).

10. *See* note 11, *infra*, for a diagram of these cycles.

results in a lower efficiency rating for its furnaces.

The theory of XXth Century is simple. Because under the optional blower cycle of the cool-down test its blower continues to furnish warm air for a longer time than other blowers, its furnace presumably would satisfy a thermostat for a correspondingly longer period. What XXth Century apparently seeks, then, is an alteration of the calculation that would lengthen the burner cycle to 24.92 minutes. During the burner cycle, the burner would operate for 3.87 minutes and remain off for 21.05 minutes.[11] A calculation that produced such a cycle, XXth Century contends, would treat its furnaces equally and better reflect their energy efficiency.

## VI.

We do not agree that the DOE model automatically is invalid as applied to XXth Century simply because it uses the standard burner calculation. In *Chrysler Corp. v. Dep't of Transportation*, 472 F.2d 659, 670–71 (6th Cir. 1972), this Court announced that on review of agency rules we "must consider whether the decision was based on a consideration of the relevant factors . . . .. In summary," said the Court, "the function of this Court is to test the 'validity' of [the agency decision]." Section 323(b)(1) of the Energy Policy and Conservation Act, 42 U.S.C. § 6293(b)(1) (1976), provides that the DOE test must "reflect energy efficiency." Section 336(b)(2) additionally provides that the test methodology must be "supported by substantial evidence" in order to survive judicial review. 42 U.S.C. § 6306(b)(2) (1976). On the basis of the present record, we cannot be sure whether use of the standard burner calculation is arbitrary or capricious, or unsupported by substantial evidence.

To be sure, it may improve the relative efficiency rating of XXth Century's furnaces to allow its burners to operate less frequently in the model than the burners of other furnaces. XXth Century's furnaces would not require as much fuel under such conditions. We cannot be sure, though, on this record whether the unusual composition of XXth Century's heat exchanger—already recognized in the optional blower cycle of the cool-down test—warranted any additional special treatment by the DOE in the fuel efficiency test.

XXth Century makes a strong argument that, in actual operation, use of the standard burner cycle unjustly may reduce the fuel efficiency rating of its furnaces. To require XXth Century's burner to start up only 4.05 minutes after its blower has stopped delivering heated air, while the burner of other furnaces enjoys a 10.3 minute interval, eventually would cause the XXth Century furnace to use relatively more fuel than the furnaces of its competitors would use in heating a room. Because the model attempts to replicate normal operating conditions, this contention of XXth Century cannot easily be dismissed.

In view of the greater difficulty of heating a cast iron exchanger, though, it may not be arbitrary or capricious for the DOE model to require XXth Century to use the same burner cycle that other producers must use. Combustion of the same amount of fuel will not raise the temperature of a cast iron exchanger and a sheet metal exchanger to the same level. This property of

---

**11.** Graphically, the three cycles discussed above appear as follows:

(a) the regular cycle devised by DOE, with standard burner and standard blower cycles;

(b) the regular cycle devised by DOE, with standard burner but optional blower cycles;

(c) the cyclical pattern that XXth Century argues the DOE should adopt;

cast iron is the intractable result of its much heavier mass. While a cast iron heat exchanger may be baked as often and as intensely as a sheet metal heat exchanger, the two will not reach the same temperature until the burner-blower cycle has repeated itself several times. Use of the standard burner cycle recognizes this simple fact.

To reflect the corollary fact that high mass heat exchangers retain heat longer, the cool-down test, as discussed above, provides an optional blower cycle. The superior heat retention ability of cast iron also results from its extraordinary mass. Accordingly, the optional blower provision allows the blowers of all furnaces to operate in the cool-down test until their heat exchangers would fall to the same temperatures, an event that takes longer to occur in the case of high mass exchangers.

The hypothetically shorter blower-to-burner interval may not unduly prejudice the efficiency test of XXth Century furnaces. If the standard cycle of the model were repeated several times, use of the standard burner calculation may give XXth Century an advantage over other producers during the early repetitions. Use of the standard burner cycle thereafter may simply recoup or even out the advantage. The standard burner calculation may incorporate a sufficient degree of symmetry. Thus there may be no net reduction in the fuel efficiency of XXth Century's furnace by virtue of the shorter burner-off period.

The present record does not demonstrate such symmetry or balance, however, and we remand the case to the DOE. Upon remand, the DOE shall determine the extent to which use of the standard burner calculation reflects such symmetry over the course of the year for which the model tests fuel efficiency. To the extent that use of the standard burner calculation does not incorporate such symmetry, the DOE shall revise the burner calculation for tests of XXth Century heat exchanger furnaces.

Accordingly, the case is remanded to the DOE for reconsideration of the calculation prescribing the standard burner frequency in the annual fuel utilization efficiency model. Pending DOE reconsideration, we continue to stay the applicability to XXth Century of the annual fuel utilization efficiency test procedures.